UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
ADVENTURE SPAS.COM, INC.,
ROBERT ARNOLD, JON BERTINI and
SALVATORE LAURIA.

JUDGE BATTS

04 CV 5227

civ
COMPLAINT

                           Plaintiffs,

            -vs-

RAVIJOT BECKER and WILLIAM
BECKER,

                           Defendants.
-----------------------------------------------------x

        Plaintiffs, by their attorneys Hantman & Associates, as and for their complaint

allege as follows;

                           OVERVIEW

   1.    This case arises out of the premeditated, intentional, improper, and illegal acts

         of a 25% shareholder and her husband-some of which have been stopped by

         reason of a previous Court Action and Police intervention- against the best

         interests of plaintiffs, Adventure Spas.Com. Inc. ("Adventure" or "Company")

         in an effort to destroy the Company for their own benefit as described

         hereafter.

   2.    The Defendants, husband and wife, were removed as active participants of

         Adventure by the majority shareholders on June 1, 2004 after the plaintiffs

         discovered a pattern of continuing frauds, embezzlements and wrongful

         actions of defendants.

   3.    Defendants then locked plaintiffs out of the companies leased New Jersey

         office as reflected in attached Exhibit A, which is a true and correct copy of a

                           -1-

"Verified Complaint To Restore Plaintiff To Possession Of Leased Premises" filed on June 7, 2004 in the Superior Court of New Jersey Law Division, Special Civil Part Camden County.

4.     The Honorable Lee B. Laskin, J.S.C signed the "Order To Show Cause For Return To Premises With Restraints" on the same day ("Exhibit B).

5.     Subsequent to the entry of the Order defendants then engaged in the following disruptive acts, each of which is jeopardizing the business of AdventureSpas.Com.Inc: within the Southern District of New York as follows:

A)  Web-site destruction and diversion in that defendants used proprietary information to transfer the web site to his own name in order to intercept, and divert e-mails, inquiries and orders from AdventureSpas.Com.Inc ("Adventure Spas" or "Company") to himself;

B)  Diverting the toll free number of Adventure Spas, used to obtain orders resulting from national media campaigns, to himself;

C)  Credit card portal interference by falsely accusing plaintiffs of fraud so as to result in the turning off of Adventure Spas credit card processing system.

D)  Improperly contacting clients, customers and subcontractors of Adventure Spas and defaming the Company and its principals by transmitting via U.S. Mail and over the Internet, patently offensive, indecent, and defamatory communications for the sole purpose of embarrassing, holding up to ridicule, and disparaging the reputations of plaintiffs.

E) These communications were transmitted via U.S. Mail, the Internet and various interactive computer services, across state lines and to a potential audience in the tens of millions, both within and outside the United States including areas within the Southern District of New York.

F) These communications were not only outside the accepted standards of morality but, more importantly, they were false statements transmitted by U.S. mail or E-mail for the sole purpose of defaming, disparaging, interfering with and causing damage and injury to all plaintiffs and discouraging customers, contractors, and suppliers from doing business with Plaintiffs.

## JURISDICTION AND VENUE

6.     Jurisdiction and venue of this Court are invoked pursuant to 28 U.S.C. 1332 and 1391(A), in that there is diversity of citizenship between the parties and the amount in controversy exceeds $ 100,000, exclusive of interest and costs, the Southern District of New York, which is also the site of 25% of the sales of Adventure Spas in the last quarter, as well as where it now maintains an account with Commerce Bank located at 285 Mamaroneck Avenue, White Plains, New York.

7.     Attempts to resolve this matter without court intervention have proved unsuccessful and Plaintiff has no recourse but to seek court intervention as defendants have ignored all efforts to cease their disruptive behavior.

## PARTIES

8.    At all times relevant herein, Plaintiff Adventure Spas is a Delaware Corporation with a principal place of business located at 5 River Road #227, Wilton, Connecticut.

9.    Plaintiff Robert Arnold is an owner of a twenty five percent (25%) interest in Adventure Spas who resides in Bristol, Connecticut.

10.    Plaintiff Salvatore Lauria is an owner of a twenty five percent (25%) interest in Adventure Spas who resides in Weston, Connecticut.

11.    Plaintiff Jon Bertini is an owner of a twenty five percent (25%) interest in Adventure Spas who resides in Weston, Connecticut.

12.    Upon information and belief, Defendant Ravijot Becker is the owner of a twenty five percent (25%) interest in Adventure Spas, who works with her husband, and co-defendant, William Becker and resides in Eversham, New Jersey.

13.    Defendant William Becker is working with and on behalf of his wife and resides in Eversham, New Jersey.

## BACKGROUND

14.    The husband and wife defendants, in or about 2000, originally formed adventure Spas, marketing company that sells high-end hot tubs.

15.    The Adventure Spas was a financial mess, averaging only 4 sales per month, and the principals were using the Adventure Spas accounts for their personal use and expenses.

16.    In addition, as will be detailed herein below, defendants were defrauding customers by selling spas, receiving deposit monies, and not delivering the spa (or "hot tub") unless the customer took legal action.

-4-

17.   In or about January 2004, plaintiff Robert Arnold, a former salesman from a competitor Thermospa, invested $ 83,000 in the Adventure Spas in exchange for a 15% interest in Adventure Spas based upon representations made to him by defendants.

18.   Upon information and belief, and unbeknownst to Robert Arnold, approximately $ 40,000 of his investment was used to renovate the building that houses Adventure Spas which is owned by defendant Ravijot Becker.

19.   Upon information and belief, the remaining $ 43,000 of Arnold's investment was used to pay off personal debts of the defendants.

20.   Shortly after Mr. Arnold became a principal in the company, sales began to increase to an average of approximately 10 to 12 per month

21.   In or about February 2004, Robert Arnold then recruited plaintiff Jon Bertini ("Bertini"), another former Thermo Spa salesman, to sell for Adventure Spas, with the opportunity to become a principal as well, also based upon representations made by defendants.

22.   Shortly after Bertini begins selling, sales increased even more dramatically to about 40 spas per month.

23.   In or about March 2004, plaintiff Salvatore Lauria ("Lauria"), a former investment banker, was approached to do an analysis of Adventure Spas finances and possibly serve as a consultant to the company.

24.   Bertini and Arnold then invited Lauria to become a principal in Adventure Spas as well.

-5-

25.    As a prerequisite to considering investing in the company Lauria requested to review the financial records of the company.  For weeks the defendants denied him access to the records.

26.    After finally being given the records, and in doing his due diligence in connection with his potential investment, Lauria uncovered the extent of the improprieties perpetrated by the defendants' in the operation of Adventure Spas.

27.    Briefly stated, it was discovered that Adventure Spas was in debt for approximately $ 350,000, including back taxes and unpaid utilities.  It was also uncovered that defendants were commingling personal monies with that of the Adventure Spas, and paying off personal debts with money from the Adventure Spas.  These personal debts included mortgages, cable bills, charitable donations, personal credit cards, food, books, etc

28.    After the individual plaintiffs confronted the defendants in regards to the improprieties and the poor financial condition of the Adventure Spas, a plan was agreed to between the parties to refinance the building owned by Ravijot Becker, which housed Adventure Spas, as a way to raise the money needed to take the Adventure Spas out of debt.

29.    On or about April 1, 2004 an agreement was entered into between the defendants and the individual plaintiffs memorializing the fact that the individual plaintiffs were each 25% owners of the newly constituted Adventure Spas (Exhibit A of Lauria Affidavit).

30.    By April 2004, Adventure Spas' sales had reached approximately $ 250,000 for the month due to additional sales people that were brought in from all over the

-6-

country.  In addition, the necessary financing was secured to relieve Adventure Spas outstanding debt.

31.   Notwithstanding, on or about that same time, it was realized that defendants were still using Adventure Spas funds by writing Adventure Spas checks for personal use.

32.   To prevent further misconduct new signature cards were created at the bank. Defendants circumvented that security measure by using the pay by phone system to pay their personal bills.

33.   In or about May 2004, upon realizing plaintiffs' realizing the new pay by phone scheme being used by defendants, defendant William Becker was removed entirely from the Adventure Spas accounts and the bank was alerted of the fraudulent activity.

34.   Also in May 2004, plaintiffs realized that William Becker, along with former salesman Hank Thomas, were cannibalizing sales that should have gone to Adventure Spas' salespeople by selling them below cost from the internet, undoubtedly with the intention of taking in the deposit and not delivering the spa.

35.   On or about June 1, 2004, defendants William and Ravijot Becker were fired by the individual plaintiffs who now owned a majority interest in the Adventure Spas (See Exhibit B of Lauria affidavit).

36.   At this point, defendants then changed the locks at the premises of Adventure Spas which led to plaintiff's calling the police and the action being brought allowing plaintiff's to regain access to the premises (See Exhibit C Lauria affidavit).

37.   Following that, defendant William Becker entered the premises of the Adventure Spas, removed proprietary information, attempted to misappropriate the Adventure Spas phone number, and crashed the company website which remains down today causing Adventure Spas irreparable harm, since the Adventure Spas relies heavily on internet sales and marketing from its website.

38.   Defendant William Becker has even gone to the extent of, illegally and fraudulently, putting his name as owner of record of the "Adventurespa.com" domain which does not belong to him, and was actually purchased by the company purchased by the company from John McGrory (See Exhibit D Lauria affidavit).

39.   Beginning in or about June 2004, William Becker has disconnected the company telephone number on three different occasions and had the calls forwarded to his own telephone number.

40.   In addition, William Becker has caused an interruption in Adventure Spas ability to process credit card payments thereby jeopardizing Adventure Spas ability to receive payment for spas that it has already delivered.

41.   William Becker has also contacted Adventure Spas' manufacturer, Clearwater Spas, in Seattle, Washington, and threatened legal action if Clearwater Spas continues to do business with the plaintiffs.

42.   Finally, defendants have entered into a course of conduct in which they are disparaging plaintiffs business reputation to third-parties by accusing plaintiffs of fraudulent conduct in connection with the operation of the business.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR BREACH OF FIDUCIARY DUTY

43.   Plaintiffs repeat and reallege each and every allegation contained in the previous paragraphs as if set forth at length herein.

44.   Defendants have a fiduciary duty to plaintiffs to act in the best interest of Adventure Spas, as opposed to benefit their own personal interests.

45.   Despite such duty defendants through have acted contrary to said duty by, *inter alia,* attempting to lock out plaintiff and interfering with the business operations including the operation of Adventure Spas' website, telephone number, and ability to process credit card payments and those acts previously outlined in the complaint.

46.   Defendants' breaches were wanton and willful thereby entitling plaintiffs to punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR INJUNCTIVE RELIEF

47.   Plaintiffs repeat and reallege each and every allegation contained in the previous paragraphs as if set forth at length herein.

   a.   Defendants should be enjoined and restrained from any and all actions designed to result in Web-site destruction and diversion

   b.   Defendants should be enjoined and restrained from using proprietary information to transfer the web site to his own name in order to intercept, and divert e-mails, inquiries and orders from AdventureSpas.Com.Inc ("Adventure Spas" or "Company") to himself;

-9-

c.  Defendants should be enjoined and restrained from Diverting the toll free number of Adventure Spas, used to obtain orders resulting from national media campaigns, to himself;

d.  Defendants should be enjoined and restrained from Credit card portal interference;

e.  Defendants should be enjoined and restrained from continuing to falsely accuse plaintiffs of fraud;

f.  Defendants should be enjoined and restrained from interfering with the Adventure Spas credit card processing system.

g.  Defendants should be enjoined and restrained from Improperly contacting clients, customers and subcontractors of Adventure Spas and defaming the Company and its principals by transmitting via U.S. Mail and over the Internet, patently offensive, indecent, and defamatory communications for the sole purpose of embarrassing, holding up to ridicule, and disparaging the reputations of plaintiffs.

48.  Plaintiffs have demonstrated a likelihood of success on the merits, the equities are in their favor, and they will be irreparably harmed if defendants continue to interfere with the business.

49.  Plaintiff has no other adequate remedy at law.

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR CONVERSION

50.  Plaintiffs repeat and reallege each and every allegation contained in the previous paragraphs as if set forth at length herein.

-10-

51.   Defendants have intentionally and without authority, exercised control over
      and interfered with plaintiffs right of possession to the monies and resources
      belonging to plaintiffs .

52.   Despite plaintiffs request for the return of the monies and resources,
      defendants have unlawfully refused to return same to plaintiffs.

53.    As a result plaintiffs have been damaged.


**AS AND FOR A FOURTH CAUSE OF ACTION
FOR INTERFERENCE WITH
PROSPECTIVE BUSINESS ADVANTAGE**

54.   Plaintiffs repeat and reallege each and every allegation contained in the prior
      paragraphs as if set forth at length herein.

55.   Upon information and belief,  defendants, with knowledge of the existence of
      plaintiffs' prospective business relationships have intentionally and without
      justification, interfered with said prospective business relationships.

56.   Upon information and belief, if it were not because of defendants' interference
      plaintiffs would have entered into contractual relationships for the prospective
      business.

57.   As a result of defendants interference with plaintiffs prospective business
      relations, plaintiffs have been caused damage.

**AS AND FOR A FIFTH CAUSE OF ACTION
FOR FRAUDULENT MISREPRESENTATIONS**

58.   Plaintiffs repeat and reallege each and every allegation contained in the prior
      paragraphs as if set forth at length herein.


-11-

59.   The representations made by defendants to the individual plaintiffs, were made and reaffirmed and upon information and belief, were known to be false when made and were made for the purpose of having plaintiffs rely upon them and make a capital investment in Adventure Spas.

60.   Upon information and belief, defendants made said representations to plaintiffs for the purpose of having them to contribute a capital contribution to Adventure Spas which defendants intended to use for the personal benefit.

61.   Plaintiffs relied upon the knowingly false representations made by defendants and have been damaged as a result.

## AS AND FOR A SIXTH CAUSE OF ACTION
## FOR DEFAMATION

62.   Plaintiffs repeat and reallege each and every allegation contained in the prior paragraphs as if set forth at length herein.

63.   Defendants, agents, employees or representatives made to third parties, have made statements about plaintiffs in that the manner in which they are conducting their business is fraudulent.

64.   Said statements were false and known to be false by defendants, and were knowingly, willfully and maliciously made by defendants,

65.   By reason of the foregoing false and defamatory statements, plaintiffs have been injured in their good name

## AS AND FOR A SEVENTH CAUSE OF ACTION
## FOR TORTIOUS INTERFERENCE WITH CONTRACT

-12-

66.     Plaintiffs repeat and reallege each and every allegation contained in the prior paragraphs as if set forth at length herein.

67.     As detailed herein above, defendants knowingly and tortiously contacted various suppliers and vendors which had existing valid contracts with plaintiffs.

68.     As a result of defendants' misrepresentations to the various suppliers and vendors of plaintiffs, there was interruption in the services being provided to plaintiffs.

69.     As a result plaintiffs suffered damage.

WHEREFORE, plaintiffs demand judgment as follows:

A.  On the first cause of action, damages in an amount to be determined at trial, but not less than $ 500,000

B.  On the second cause of action, a permanent injunction permanently enjoining defendants from any further actions as described herein.

C.  On the third cause of action, damages in an amount to be determined at trial, but not less than $ 500,000.

D.  On the fourth cause of action, damages in an amount to be determined at trial, but not less than $ 500,000.

E.  On the fifth cause of action, damages in an amount to be determined at trial, but not less than $ 500,000.

F.  On the sixth cause of action, damages in an amount to be determined at trial,  but not less than $ 500,000.

G.  On the seventh cause of action, damages in an amount to be determined at trial,

but not less than $ 500,000.

H.    Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       July 1, 2004

HANTMAN & ASSOCIATES

By:

Robert J. Hantman ( 3947)
Attorneys for plaintiffs
432 Park Avenue South
2nd Floor
New York, NY 10016
(212) 684-3933

-14-